UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RANDALL LEE WADSWORTH,

    Plaintiff,

v.                                                                             CASE NO. 6:19-CV-862-ORL-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**<u>ORDER</u>**

This is an appeal of the administrative denial of disability insurance benefits (DIB) and period of disability benefits.[1] *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff argues the administrative law judge (ALJ) erred in formulating the RFC because she failed to adopt the opinions of Arthur Horn, M.D., Plaintiff's treating doctor. After consideration of the joint memoranda (R. 24) and the administrative record (R. 16), I find the Commissioner's decision is supported by substantial evidence. I affirm.

    A.    *Background*

Plaintiff Randall Lee Wadsworth, born on April 14, 1964, was forty-seven old on his alleged amended onset date, June 20, 2011.[2] His date last insured (DLI) was December 31, 2011, and he must establish disability on or before that date in order to be entitled to a period of disability or DIB. Hence, the period at issue here is narrow, the six-month period beginning June 20, 2011, and ending December 31, 2011 (R. 17). On his disability application, Plaintiff claimed disability due to peripheral neuropathy, sleep apnea, obesity, acute chronic edema, and chronic foot pain (R.

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

[2] Originally Plaintiff alleged an onset date of January 1, 2007.

76). He has a high school education, and work experience from 1999 through 2006 as a heavy equipment operator for an excavation/ construction company (R. 32, 221). He has already been awarded Title XVI benefits (R. 30).

The ALJ held a hearing on February 7, 2018, then entered a decision denying Plaintiff's applications for DIB and period of disability. Specifically, the ALJ found Plaintiff had the following severe impairments: diabetes mellitus; neuropathy; obesity; plantar fasciitis; and sleep apnea (R. 18). The ALJ concluded that:

> through the last date of insured the Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). He could lift and/or carry 10 pounds occasionally and frequently. He could stand and/or walk for two hours total in an eight-hour workday. He could never climb ladders, ropes, or scaffolds. He could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He could have occasional exposure to vibrations and never work in proximity to moving, mechanical parts or in high, exposed places.

(R. 18). The ALJ The ALJ opined that, with this RFC, Plaintiff cannot perform his past relevant work, but can work as an addresser, call out operator, charge account clerk (R. 22). As a result, she found Plaintiff not disabled from June 20, 2011, through his DLI for purposes of his DIB and period of disability claims (R. 22). After the Appeals Council denied his request for review, Plaintiff filed this action (R. 1).

### B.     Standard of Review

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations. These regulations establish a "sequential evaluation process" to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

*C. Discussion*

The ultimate responsibility for reviewing and assessing Plaintiff's RFC rests with the ALJ. RFC is an assessment based on all relevant medical and other evidence of Plaintiff's ability to work despite her impairments. *Castle v. Colvin*, 557 Fed. Appx. 849, 852 (11th Cir. 2014) (citing *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1987)). In rendering the RFC, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1529(c)(3), 404.1545(a), (e). Generally, the opinions of examining physicians are given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. § 404.1527(c)(1-5). Indeed, the ALJ must give the opinion of treating a physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis, supra,* 125 F.3d at 1440). Good cause is shown when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips,* at 1241. Where the ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2004). In reaching the RFC, the ALJ must state the grounds for his decision with clarity to enable the Court to conduct a meaningful review. However, in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See e.g. Packer v. Astrue*, case no. 11-0084-CG-N, 2013 WL 593497, at *3 (S.D. Ala. Feb. 14, 2013), aff'd, 542 Fed. Appx. 890 (11th Cir. 2013). ("[N]umerous courts have upheld ALJ's RFC determinations

notwithstanding the absence of an assessment performed by an examining or treating physician."). Rather, the ALJ's RFC must be supported by substantial evidence, and need not correspond to the limitations imposed by a treating source. *White v. Saul*, case no. 8:18-cv-2275-T-SPF, 2019 WL 4744943, *3 (M.D. Fla. Sept. 30, 2019) ("ALJ's RFC need not be identical to a particular assessment of record or incorporate the precise limitations set forth by a physician"). *See also Cooper v. Astrue*, 373 Fed. App'x. 961, 962 (11th Cir. 2010) (finding assessment of RFC and corresponding limitations are "within the province of the ALJ, not a doctor"); 20 C.F.R. § 404.1545(a)(3) (stating that ALJ must base RFC on all of the relevant medical and other evidence).

Against this backdrop, Plaintiff argues the ALJ erred in formulating her RFC by failing to provide good cause for assigning only "little weight" to the opinions of Dr. Horn, his treating pain management physician. She also asserts that because the ALJ assigned "little weight" to Dr. Horn's opinions, assigned "limited weight" to the state agency consultant Dr. Patel's opinions, and did not weigh any other medical opinions, the ALJ failed to support her RFC with substantial evidence. Upon consideration, I find the ALJ properly considered all of the relevant medical and other evidence and her RFC is supported by substantial evidence.

Dr. Horn treated Plaintiff from 2007 through 2017, and completed a Physical Restrictions Evaluation form on August 9, 2017 (R. 399-402). The fill-in-the-blank form indicates at the top that it applies for the time period "beginning 6/30/11 through the present" (R. 399). Dr. Horn opined on the form that Plaintiff is limited to sitting for 15-30 minutes without interruption and standing or walking for 10-20 minutes without interruption; and that he is limited to sitting for 2 1/2 hours, standing/ walking for 2 1/2 hours, and lying down/ reclining for 2-3 hours during an 8-hour day (R. 399). Dr. Horn further opined that Plaintiff is limited to lifting or carrying 10-15 pounds for 1/3 of an 8-hour workday (R. 400).

In considering the opinion evidence from Dr. Horn, the ALJ explained:

> As for opinion evidence, the undersigned gives little weight to the opinion of Dr. Horn limiting the claimant to standing/walking a total of two and a half hours and sitting a total of two and a half hours in an eight-hour day, with the remainder of the time having to lie down/ recline every two to three hours for a total of two to three hours in an eight-hour day (Exh. 5F). This is not consistent with his longitudinal treatment records noting that the claimant's conditions were stable, doing well, and functioning day-to-day and little to no changes in his prescribed medications, which were effective without side effects (Exh. 2F/47-61). The undersigned also considered the opinions of the State agency medical consultant who reviewed the documentary record at the reconsideration level of the administrative review and assessed the claimant for his Title XVI claim with residual functional capacity to perform sedentary work with postural and environmental limitations (Exh. 8A); however, it was determined that there was insufficient evidence to assess the Title II claims (Exh. 7A). The undersigned gives limited weight to the opinion regarding the claimant's Title II claim, as it does not appear that the consultant reviewed Exhibits 2F and 3F, but gives great weight to the opinion for the claimant's Title XVI claim, as that is consistent with the record.

(R. 20-21). Prior to addressing Dr. Horn's opinions, the ALJ discussed Dr. Horn's records from the relevant time frame, June 30, 2011, through December 31, 2011, as well as the records from 2012 (R. 20). The ALJ noted Dr. Horn's office notes were "replete with references to working during the period at issue" and showed "physical examinations that were overall normal except for decreased, but intact, deep tendon reflexes and occasional mild edema in the lower extremities" (R. 20). Summarizing the office notes from the relevant time period, the ALJ observed that "throughout 2011 [he] remained medically stable and continued to do well to quite well, with treatment of reasonable response to significant benefit and allowing him to function with his peripheral neuropathy symptoms without significant side effects and improved functionality" (R. 20). The ALJ also noted that Plaintiff got new shoes in September 2011 and reported benefit from them with less foot discomfort, "doing much better and able to spend much time on his feet without any severe symptoms" (R. 20). The ALJ considered that mental status and neurological exams were consistently normal aside from "decreased deep tendon reflexes and occasional mild edema in the lower extremities (Exh. 2F, 47-61)." Even after the DLI, Dr. Horn's records showed that "throughout 2012, there is no indication of significant worsening of his conditions" (R. 20). The ALJ stated that "the records show that he continued to remain medically stable, doing reasonably

6

well with his peripheral neuropathies symptoms, and present treatment allowing him to function on a day-to-day basis.  He generally continued with the same physical exam findings and prescribed medications. (Exh. 2F, 62-74)."

Review of the decision shows that in reaching her RFC, the ALJ considered Dr. Horn's longitudinal treatment records and found that these records inconsistent with the limitations. Specifically, the ALJ stated the records showed Plaintiff was "stable, doing well, and functioning day-to-day [with] little to no changes in his prescribed medications" (R. 20).  Dr. Horn's opinions, set forth on a fill-in-the-blank form in 2017, imposed harsh restrictions that the ALJ opined were inconsistent with Dr. Horn's own 2011 office notes that generally described Plaintiff as stable, functioning day-to-day with effective medications and shoes that enabled him to be on his feet without much discomfort despite his peripheral neuropathy symptoms (R. 20). While Plaintiff suggests that the ALJ "inappropriately played doctor" or "arbitrarily substitute[d] her own hunch or intuition for the diagnosis of a medical professional," I do not agree. As already stated, the applicable regulations provide that assessing a Plaintiff's RFC is reserved for the Commissioner; at the hearing level it is the ALJ who reaches the RFC finding.  *See* §§ 404.1527(d)(2), 404.1546(c).   Per the regulations, she was responsible for assessing Plaintiff's RFC based on all of the relevant medical and other evidence.  *See* 20 C.F.R. §§ 404.1545(a)(3), 404.1546(a). Despite Plaintiff's contrary assertion, I find the ALJ provided good cause for her decision to accord only 'little weight" to Dr. Horn's opinions.  The ALJ was under no legal obligation to adopt Dr. Horn's limitations verbatim or in part.

To the extent that Plaintiff asserts the ALJ erred in weighing the opinions of the state agency non-examining physician, Dr. Sunita Patel, who reviewed records at the reconsideration level of the administrative proceedings at completed a Disability Determination Explanation on April 5, 2016 (R. 96-107). Plaintiff's argument concerning Dr. Patel is very limited.  She asserts

only that because the ALJ assigned "little weight" to Dr. Horn's opinions, assigned "limited weight" to Dr. Patel's opinions, and did not weigh any other medical opinions, the ALJ failed to support her RFC with substantial evidence. As previously stated, however, the ALJ is not bound by the opinions of acceptable medical sources. Nonetheless, I find that she properly considered Dr. Patel's opinions and set forth clear reasons for giving only "limited weight" to Dr. Patel's opinions regarding Plaintiff's Title II claim.[3]

In sum, I find substantial evidence supports the ALJ's decision denying Plaintiff's applications for DIB and period of disability (R. 22). In reaching her conclusion that Plaintiff is not disabled at any time from June 20, 2011, through December 31, 2011, his DLI, the ALJ has provided the reviewing court with a sufficient basis for a determination that she has followed proper legal principles. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). As the Commissioner indicates, this Court "will not second guess the ALJ and the weight [a] treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Comm'r of Soc. Sec.*, 808 F.3d 818, 823 (11th Cir. 1985). To the extent Plaintiff asks me to re-weigh the evidence or substitute my opinion for that of the ALJ, I cannot. If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence, the Commissioner's decision must be affirmed even if I would have reached a different conclusion. *See Bloodsworth*, *supra,* 703 F.2d at 1239. Thus, even if substantial evidence supported a more restrictive RFC, this Court must affirm if the ALJ's decision is supported by substantial evidence. *Edwards v. Sullivan,* 937 F.2d 580, 584 n. 3 (11th Cir.1991).

---

[3] Dr. Patel found Plaintiff disabled, however she indicated the "established onset date" of disability was August 17, 2015, nearly four years after Plaintiff's DLI (R. 106). In discussing Dr. Patel's opinions and giving limited weight to Dr. Patel's opinion regarding the claimant's Title II [DIB] claim, the ALJ stated "it does not appear that the consultant reviewed Exhibits 2F and 3F" (R. 21). Dr. Patel's Disability Determination Explanation reflects that she "sent for records dated 2007-2012 from Arthur H. Horn, MD. Not received yet." (R. 100, 104).

*D. Conclusion*

For the reasons stated above, it is ORDERED:

    (1) The ALJ's decision is AFFIRMED; and

    (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on May 7, 2020.

_Mark A. Pizzo_
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE